IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40255
Summary Calendar
_____

IN THE MATTER OF:  C. W. RAINES and
LAURA E. RAINES,

                                        Debtors,

STAR SERVICE, INC. OF DELWARE,

                                        Appellant,

v.

C. W. RAINES and LAURA E. RAINES,

                                        Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
(October 11, 1995)
Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

     Star Services, Inc. of Delaware filed this adversary to
rescind the release of a lien it had held on the homestead
property of C.W. and Laura Raines.  The bankruptcy court denied
rescission and the district court affirmed this decision.  Star
appeals.  We affirm.

_____

[*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the court has determined
that this opinion should not be published.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are undisputed.  On August 10, 1983, Miles Homes Division of Insilco Corporation ("Miles Homes"), a Connecticut corporation, entered into a Builder's and Mechanic's Lien Contract (With Power of Sale) ("the lien contract") with C.W. and Laura Raines ("the Raineses") to provide the Raineses with funds to build their home.  The contract price was $47,618.00 and the Raineses secured payment of the contract with Tract No. 30 of the K-Bar-J Ranch Subdivision, being a 7.16 acre tract of land in Henderson County, Texas, a part of the J. Henshaw Survey, A-341 ("the property").  The contract was filed for record on September 2, 1983, and recorded in the Real Property Records of Henderson County.  Miles Homes transferred the lien contract to Miles Finance, Co., Inc. ("Miles Finance") on September 22, 1983, and the transfer was recorded.  Miles Finance transferred and reassigned the lien contract to Miles Homes on September 18, 1987, and this transfer was also recorded. On September 25, 1987, the Raineses and Miles Homes entered into an Extension of Real Estate Note and Lien extending payment terms to September 7, 2002, and recorded the extension.

Miles Homes was subsequently merged into Insilco Corporation ("Insilco"), a Delaware corporation, which became the legal owner and holder of the debt owed by the Raineses and the lien granted by the Raineses on the property.  Insilco issued and recorded a Release of the Builder's and Mechanic's Lien Contract ("the release"), effective as of May 30, 1990.  The release was issued

2

due to "mistake and error." Insilco also transferred and assigned the debt and the lien contract to Star Acquisition Corporation, now Star Services, Inc. of Delaware ("Star"), effective as of May 31, 1990. At the time of the release, the contract had not been fully paid by the Raineses.

The Raineses filed Chapter 13 Bankruptcy on January 11, 1993 in the United States Bankruptcy Court for the Eastern District of Texas. When the Raineses filed their schedules, they were unaware that the lien had been released. Accordingly, they listed the obligation to Star on Schedule A and Schedule D as a secured claim against their homestead in the amount of $27,158.00. In their Chapter 13 Plan ("the Plan"), they proposed to pay secured creditors outside the Plan, with the exception of arrearages to Star in the amount of $1,613.39, which they proposed to pay through the Plan.

At some point after the Raineses filed for bankruptcy, Star notified the Raineses that the lien had been mistakenly released and that the release had been recorded. Star asked the Raineses to cooperate with Star to rescind the release. Upon learning this information, the Raineses discontinued payments on the debt to Star. On May 20, 1993, Star filed a complaint in the bankruptcy court to determine the validity of its lien.

The bankruptcy court conducted a preliminary hearing on August 26, 1993. At that time, the court requested briefing on the issue of whether a Chapter 13 debtor could exercise the strong arm powers under 11 U.S.C. § 544. At this hearing, it was

3

uncontested that the lien had been released by mistake and that the Raineses would not have contested the lien if it had not been erroneously released.

The parties prepared a Joint Pretrial Order with stipulated facts. The trial for the adversary proceeding was held on September 30, 1993. At that time, the bankruptcy court ruled that the Raineses could not assert the strong arm powers under 11 U.S.C. § 544. The court then heard argument on the merits and concluded that to grant the relief of reformation or rescission, as requested by Star, would create a lien upon the Raineses' homestead in violation of the Texas Constitution. On October 22, 1993, the court entered its judgment that Star was not entitled to a lien.

Star then filed a motion for a new trial. Star argued in its brief in support of this motion, inter alia, that it had satisfied the four-part test under Texas law that determines whether a party is entitled to the relief of rescission for its own unilateral mistake. The bankruptcy court entered an order denying this motion in which it concluded that Star had failed to satisfy the four-part test.

Star appealed to the United States District Court for the Eastern District of Texas. In its brief, Star urged for the first time that a two-part test for the availability of rescission may apply under certain circumstances, rather than the previously-mentioned four-part test, and that those circumstances were present in this case. On February 23, 1995, the district

4

court entered its Memorandum Opinion and Order. In its order, the court held that the bankruptcy court was correct in its conclusions of law. In addition, the court found it necessary to make further specific conclusions of law that were "especially pertinent to the issues raised on appeal." Among these conclusions, the court held that Star had not satisfied the four-part test for rescission based on unilateral mistake and that there were no circumstances present that justified a departure from the four-part test. Star timely appealed to this court.

## II. DISCUSSION

Star makes the following arguments on appeal: (1) rescission of the release would not violate the Texas Constitution; (2) the two-part test for rescission based on unilateral mistake--as opposed to the four-part test--applies in this situation because the release is a unilateral act rather than a negotiated contract; (3) under the two-part test, Star is entitled to rescission because there is no innocent purchaser for value in this case and because the Raineses have not relied on the release to their detriment; (4) even if the four-part test applies, Star is still entitled to rescission because the record does not show that the release was the result of anything more than ordinary negligence. The Raineses counter that Star has failed the four-part test and is estopped from raising the issue of the two-part test because it failed to make this argument to the bankruptcy court. Alternatively, Star argues that, if the two-part test

5

applies, Star is not entitled to rescission because the Chapter 13 Trustee is an innocent purchaser for value and because the Raineses have relied on the release to their detriment by making approximately two years worth of payments under a Plan that does not treat Star as a secured creditor.

## A. Standard of Review

Although the bankruptcy appellate process makes this court the second level of review, we perform the identical task as the district court. Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II), 994 F.2d 1160, 1163 (5th Cir.), cert. denied, 114 S. Ct. 550 (1993). We review findings of fact by the bankruptcy court under the clearly erroneous standard and decide issues of law de novo. Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir.), cert. denied, 115 S. Ct. 573 (1994); Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 434 (5th Cir. 1994). Although we benefit from the district court's consideration of the matter, the amount of persuasive force to be assigned to the district court's conclusion is entirely a matter within our discretion. Briscoe II, 994 F.2d at 1163.

## B. Which Test Applies?

We must first consider which test applies under Texas law to the determination of whether Star is entitled to the equitable remedy of rescission of the release of the lien. In its brief in

support of its motion for a new trial, Star urged the bankruptcy court to apply the four-part test originally set forth in James T. Taylor and Son, Inc. v. Arlington Indep. Sch. Dist., 335 S.W.2d 371 (Tex. 1960). In that case, the Texas Supreme Court stated:

> [E]quitable relief will be granted against a unilateral mistake when the conditions of remediable mistake are present. These conditions generally are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i. e., rescission must not result in prejudice to the other party except for the loss of is bargain. There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties.

Id. at 373. The bankruptcy court applied this test and denied rescission because it concluded that Star had failed to meet its burden with respect to the third element of the test. In so ruling, the court stated:

> Because [Star's] case was based solely upon the agreed facts, the Court was not presented with facts on why and how the release occurred by "mistake and error". Without live witnesses regarding the filing of the release or more detailed agreed statement of facts, the Court could not evaluate the degree of carelessness which occurred when the release was filed. Although ordinary negligence is not enough to bar the granting of equitable relief, negligence amounting to carelessness and lack of good faith is. . . . Since the agreed facts are wholly insufficient regarding the actual filing of the release and Insilco's knowledge of what it was doing when it filed

7

the release, [Star] failed in its burden of establishing that the mistake would have occurred regardless of the exercise of ordinary care. There is no evidence that the filing of the release was the result of ordinary negligence. Accordingly, [Star] failed to establish that it is entitled to have the release rescinded.

On appeal to the district court, Star contended that the agreed facts provided sufficient basis for the court to find that there was no carelessness or lack of good faith, and therefore, that Star had satisfied the third element. Alternatively, Star argued for the first time that the four-part test set forth in James T. Taylor and Son may not be applicable to the case at bar. First, Star pointed out that James T. Taylor and Son left open the possibility that rescission may be appropriate even where the four-part test is not satisfied by stating that "[t]here may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties." Id. at 373. Star then argued that this case was analogous to Hayes v. E.T.S. Enters., Inc., 809 S.W.2d 652 (Tex. App.--Amarillo, 1991, writ den.), in which the Texas Court of Appeals found that the four-part test did not apply and that a different, two-part test was more appropriate.

Specifically, Hayes involved the release of an oil and gas lease by mistake. The trial court granted summary judgment awarding rescission based upon unilateral mistake. The appellant claimed that summary judgment should be reversed because there were fact issues as to whether the third element of the James T. Taylor and Son test was satisfied; that is, whether the mistake

8

of releasing the oil and gas lease was made regardless of the exercise of ordinary care. The Texas Court of Appeals affirmed, finding that the four-part test did not apply. In so holding, the court stated:

> We do not think the elements set out in the Roland case [a case that applied the four-part test], particularly the one requiring a showing that the mistake would have occurred regardless of the exercise of ordinary care, are applicable here. . . .
>
> . . . .
>
> A study of Roland, in which all of the elements set out in that case have been strictly applied, as well as other similar cases, reveals that these are instances arising out of contracts based upon an offer and acceptance, a negotiation, mutuality of consideration, and performance. Once a bargain has been reached in those instances, it would clearly be inequitable to allow one party relief on the basis of a unilateral mistake without the necessity of pleading and proving each of the enumerated elements. This cause, of course, does not arise from a suit in which a party is suing another party seeking relief from such a negotiated contract.
>
> In this instance, we think the proper rule to apply is that stated in Armbruster v. Thetis Energy Corp., 675 P.2d 476 (Okl. App. 1983). In that case, a lessee sought cancellation of a release of an oil and gas lease executed by the lessee under the mistaken belief that the lease had expired. In such a situation, the court held the lessee was entitled to cancellation of the release unless (1) the cancellation would offend the rights of an innocent purchaser for value or (2) another party in good faith and in innocent reliance, i.e., reliance without notice or knowledge of facts which would suggest the probability of an invalid release, had made a position alteration that could not be reversed without significant prejudice.

Id. at 659 (citations omitted).

The district court in the instant case applied the four-part test and concluded that Star had failed to establish its burden that the mistake of issuing the release was made regardless of the exercise of ordinary care. The court apparently declined to consider the possible application of the two-part test in Hayes, stating only that "[u]nusual circumstances are not present in this case that would justify awarding the appellant with remedial relief even though the appellant was unable to demonstrate that the unilateral mistake was made regardless of the exercise of ordinary care."

On appeal, Star reurges its argument that the two-part test in Hayes applies to this situation and that the bankruptcy court and district court incorrectly applied the four-part test set forth in James T. Taylor and Sons. The Raineses respond that Star is estopped from raising this argument on appeal because it had argued to the bankruptcy court that the four-part test was the correct standard.

We have held that we need not consider arguments that were not made to the bankruptcy court, but were raised for the first time on appeal to the district court and were not addressed by the district court. Insilco Corp. v. United States (In re Insilco Corp.), 53 F.3d 95, 99-100 (5th Cir. 1995). Such is the case with Star's argument regarding the two-part test in Hayes.[1]

---

[1]Star contends that it is not raising this argument for the first time on appeal because it has always argued that it is entitled to rescission under Texas law. However, Star cannot avoid the rule by characterizing its earlier argument so broadly; every litigant argues that he is entitled to relief under the law

10

Of course, this rule is subject to the exception that we will consider an argument raised for the first time on appeal if it involves a pure legal question and our failure to consider it would result in a miscarriage of justice. Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 601 (5th Cir.), cert. dismissed, 486 U.S. 1027, and cert. denied, 488 U.S. 848 (1988). The issue of which test under Texas law governs the availability of equitable relief for unilateral mistake is certainly a purely legal question. Therefore, we must determine whether a miscarriage of justice would result if we declined to consider Star's argument that its request for rescission should be governed by the two-part test.

At the outset, we note that the rule that arguments must be made to the trial court in order to be preserved for appeal takes on a particular urgency in the context of an adversary proceeding in a Chapter 13 bankruptcy case. This is so because the bankruptcy judge must not only resolve the adversary, but also faces the task of confirming the Plan. Therefore, it is especially important that the bankruptcy court have all relevant legal arguments before it so that it can properly resolve the adversary proceeding and confirm a Plan that correctly sets forth the debtors' obligations.

If we do not apply the two-part test to resolve Star's claim, and Star is not otherwise entitled to relief, it is

of the relevant jurisdiction. In this case, Star did not advance its theory of the two-part test until its brief on appeal to the district court.

11

certain that Star will suffer some injustice in that it will lose a lien securing a debt of approximately $27,000 due to a mistake made by the previous holder of the lien. In the "miscarriage of justice" calculus, however, we do not confine our inquiry to the injustice that may be visited upon the party urging an argument not previously presented. We also think it appropriate to evaluate what injustice may occur if we do consider the argument. Specifically, we must consider in the instant case what injustice may be visited upon the Raineses if we allow Star to make the two-part test argument and Star prevails.

When Star learned that Insilco had erroneously issued and recorded a release of the lien, Star notified the Raineses and sought their cooperation in reinstating the lien. Until this point, the Raineses had been making payments on the debt to Star and had listed Star as a secured creditor in the Plan. Faced with the uncertainty of the continuing validity of lien, however, the Raineses found themselves in a Catch-22 situation: On one hand, the Raineses were legally bound to discontinue payments to Star as a secured creditor because otherwise such payments would constitute an unfair discrimination between Star and the other unsecured creditors, in violation of 11 U.S.C. § 1322(b)(1). On the other hand, discontinuing payments to Star as a secured creditor created the possibility that the lien would ultimately be declared valid at the conclusion of the appellate process and the Raineses would have to cure their failure to make payments in

12

the interim.  The Raineses chose to discontinue payments.[2]  If

Star were to prevail in this appeal because it satisfied the two-

part test, the Raineses would have to cure approximately two

years worth of payments to Star as a secured creditor--payments

that they otherwise clearly intended to make.  Because this is

not an appeal from the Confirmation Order, the Plan is not

contained in the record on appeal.  Therefore, it is impossible

for us to gauge whether the Raineses would be able to cure this

deficiency under the current Plan or whether they would default

and lose their homestead.  Given the circumstances under which

these events transpired, the latter scenario would also be a

miscarriage of justice.  We simply have no way to measure the

probability of such an occurrence.

Therefore, because our consideration of Star's two-part test

argument may cause a grave injustice to be visited upon the

Raineses as well, the question of whether there is potential for

a general miscarriage of justice in this case is, at best,

indeterminate.  Accordingly, we choose to exercise our discretion

in this regard and hold that the applicability of the two-part

Hayes test is not properly before this court.


## B.  Application of the Four-Part Test

We now review the district court's holding that Star is not

entitled to rescission of the release of the lien because it has

---

[2]Because this is not an appeal from the Confirmation Order,
we do not know what Star has received as an unsecured creditor
under the Plan.

failed to show that the release was made regardless of the exercise of due care, as required by the four-part test set forth in James T. Taylor and Sons.  Star contends that "a mistake and nothing more indicates ordinary negligence, the kind present in all mistakes."  Consequently, Star argues, the parties' stipulation that the release was the result of a mistake is effectively a concession by the Raineses that the release was the product of ordinary negligence.  Star then concludes that, because James T. Taylor and Sons only prohibits equitable relief where the negligence involved amounts to carelessness or lack of good faith, the third element of the test is met and Star is entitled to rescission of the lien.

The logical fallacy in this argument is that, regardless of the accuracy of the proposition that "a mistake and nothing more indicates ordinary negligence", for which Star has cited no authority, the Raineses have not stipulated that the release was the result of a mistake "and nothing more."  The Raineses have only agreed to the fact that the release was issued and recorded as a result of "mistake and error."  Such a statement does not foreclose the possibility that the stipulated mistake and error may have resulted from carelessness or lack of good faith, or that the mistake may have otherwise occurred due to a failure to exercise ordinary care.  Therefore, we do not agree that the stipulation that a mistake occurred in this case is conclusive evidence that the mistake was made in the exercise of ordinary care.

14

Furthermore, the fact that the Raineses agreed to try this case only on the stipulated facts does not affect our analysis. As the bankruptcy court and the district court both concluded, the James T. Taylor and Sons case clearly assigns to the party seeking relief the burden of showing that the mistake was made regardless of the exercise of ordinary care. Therefore, if Star wanted to try this case on stipulated facts, it had the burden of insuring that those facts were comprehensive enough to support such a showing and to allow the court to make a decision. Star's argument shifts the burden to the Raineses to propose stipulated facts that demonstrated a lack of ordinary care or to state expressly that it disputed any facts not otherwise stipulated. Such a position is not consistent with the language of James T. Taylor and Sons. Accordingly, we agree with the bankruptcy court and the district court that Star has failed to meet its burden of showing that the mistake that resulted in the release was made regardless of the exercise of ordinary care, and therefore, Star is not entitled to rescission.[3]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[3]Because we find that Star is not entitled to rescission of the release of the lien, we need not decide whether such rescission would violate the Texas Constitution.